**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | : Criminal No. 07-153 (ESH) |
| | : |
| v. | : |
| | : |
| **LONNELL GLOVER,** *et al.,* | : |
| Defendants. | : |

### GOVERNMENT'S MOTION TO DISPOSE OF
### EXCESS SEIZED PHENCYCLIDINE

The United States of America, by its attorney, the United States Attorney for the District of Columbia, respectfully moves this Court to allow for the destruction of excess quantities of the hazardous narcotic phencyclidine ("PCP") that were acquired during the investigation of this case. As grounds for this motion, the government relies on the following points and authorities, and any other such points and authorities that are permitted at a hearing on this motion.

*Facts*

The Indictment in *United States v. Glover, et al.*, Criminal No. 07-153, is related to the Indictment in *United States v. Suggs, et al.,* Criminal No. 07-152, in that both arise from the same investigation and the same series of court-authorized interceptions of wire and oral communications. All of the defendants in both cases are charged in Count One with conspiracy to distribute and possess with intent to distribute one kilogram or more of PCP. The defendants indicted in *United States v. Glover* are also charged with conspiracy to distribute and possess with intent to distribute one kilogram or more of heroin. Both charges are in violation of Title 21, United States Code, Section 846. The

Indictments charge that the conspiracies began on or about August 1, 2005, the exact date being unknown, and continued thereafter up to and including at least June 11, 2007, in the District of Columbia, the District of Maryland, the Eastern District of Missouri, the Central District of California, the Northern District of Georgia, and elsewhere. As of July 11, 2007, twenty-three of the twenty-six defendants in the two indictments had been arrested and brought before the Court. The three defendants yet to be arrested are Cooleridge Bell, Charles Gladden, and Joe Brown, Jr.

In March and June 2007, numerous search warrants were executed in this case in which law enforcement recovered large amounts of PCP. First, on March 27, 2007, law enforcement recovered approximately two and a half gallons of PCP from 4000 10th Street, NE, Washington, D.C. Later, on June 19, 2007, additional search warrants produced large quantities of illegal narcotics, firearms, and U.S. currency. As a result of those search warrants, PCP was recovered from the following locations: 4908 Brentley Road, Temple Hills, Maryland; 2009 Marbury Drive, District Heights, Maryland; 1375 Fairmont Street, Washington, D.C.; 47 Randolph Place, NW, Washington, D.C.; 634 Capitol Heights Blvd, Capitol Heights, Maryland; and 2518 Q Street, SE, Washington, D.C. In addition, law enforcement recovered PCP from "controlled-buy" operations.

Due to the dangerous nature of liquid PCP, the DEA has a strict internal policy requiring chemists to retain only small one-ounce samples of the drug from each of the search locations. The policy requires that the excess PCP be destroyed. Before destruction, the total weight is recorded and a chemical analysis is conducted on the PCP. Reports and testimony from DEA chemists, as well as the one-ounce samples, are made available to defendants for their review.

In its liquid form, PCP is suspended in ethyl ether ("ether"), a colorless, volatile liquid that emits heavy vapors. The vapors may cause drowsiness, dizziness, mental confusion, faintness, and, in high concentrations, loss of appetite, fatigue, and nausea. Ether is currently classified by the National Fire Protection Association ("NFPA") as "H2 F4", for noxious vapors and flammability. The "H2" rating means that ether is a health hazard and individuals should only be exposed to it wearing a self-contained breathing apparatus, a device which provides breathable air in hostile environments.

Ether is also extremely flammable. The NFPA classifies ether as "F4", the most severe rating for flammability. The "F4" rating is defined as "very flammable gases, very volatile flammable liquids, and materials that in the form of dusts or mists readily form explosive mixtures when dispersed in air."

Ether's dangerousness is only exacerbated by its ability to erode plastic and other material. The DEA protocol for storing the small one-ounce samples of liquid PCP involves placing the drug in a sealed glass container, placing the glass container inside a sealed plastic container and then heat sealing the plastic container.

*Argument*

The dangers associated with storing the excess PCP, the government's intention to retain samples and secondary evidence, and the internal policy of the DEA justifies the court-ordered destruction of the excess quantities of the drug. In its liquid form, PCP emits vapors which can cause an array of health problems for the individuals working with and around the drug. Considering the extreme inconvenience and danger associated with storing unnecessary excess quantities of PCP for an extended period of time, samples, photographs, and reports from any scientific analyses should be deemed

3

sufficient secondary evidence.  In addition, those defendants currently before the Court will be given an opportunity to review the excess evidence before its destruction, pursuant to Federal Rule of Criminal Procedure 16(a)(1)(E).  The government's request to destroy the excess seized PCP will not unduly prejudice the defendants because the excess evidence is neither material nor exculpatory.  Further this motion is a good faith effort to protect the safety of law enforcement personnel and the public.  It is for these reasons that this motion should be granted.

      The Supreme Court has held that a defendant's due process rights are not violated by the destruction of evidence unless the evidence is material and potentially exculpatory and the government failed, in bad faith, to preserve it.  *Arizona v. Youngblood*, 488 U.S. 51, 58 (1988);  *see also California v. Trombetta*, 467 U.S. 479, 488-89 (1984); *United States v. McKie*, 951 F.2d 399, 403 (D.C. Cir. 1991); *Henry v. Page*, 223 F.3d 477, 481 (7th Cir. 2000)(finding no due process violation when government destroyed cannabis and cocaine seized from defendant's car, because nothing in record suggested substances possessed exculpatory value prior to destruction); *United States v. Ramos*, 27 F.3d 65, 72 (3d Cir. 1994)(finding no evidence of bad faith when police officers destroyed evidentiary notes, because the officers were unaware of the policy of preserving notes and were following past experience and departmental procedure).

      In *Youngblood*, one justification cited for requiring a showing of bad faith was that it limited the extent of the police's obligation to preserve evidence to reasonable bounds, inferring that in some situations destruction of evidence is excusable and reasonable.  *Youngblood*, 488 U.S. 51, 58 (1988).  In order to determine whether destruction was instituted in bad faith, courts have looked at the agency responsible for

4

the destruction, the reasons the evidence was destroyed, and the prosecutions efforts to retain secondary evidence. *United States v. Parada*, 289 F.Supp.2d 1291, 1303 (D.Kan. 2003).

For example, in *Parada*, the court found the government did not act in bad faith in the destruction of alleged PCP. *Parada*, 289 F.Supp.2d 1291, 1303 (D.Kan. 2003). The court noted the defense failed to show the officers acted in bad faith because the evidence was destroyed as a result of a standard procedure employed by a government agency. *Id.* The court further justified the destruction by noting that the "PCP was disposed of by a hazardous materials company because PCP is a hazardous substance whose storage poses obvious risks." *Id.* In addition, any inference of bad faith was further quashed by the fact that the government retained secondary evidence, thereby demonstrating good intention on the part of the prosecution. *See also United States v. McKie*, 951 F.2d 399, 403 (D.C. Cir. 1991)(finding no bad faith on the part of the government when it lost physical crack cocaine evidence and instead relied on DEA lab reports and testimonials); *United States v. Chase*, 946 F.2d 1567, No. 89-3098, 1991 WL 185047, at *1 (D.C. Cir. Dec. 5, 1991)(finding no bad faith where only samples of dangerous PCP evidence were maintained in accordance with DEA routine procedures for dealing with "such dangerously flammable fluids"); *United States v. Belden*, 957 F.2d 671, 674 (9th Cir. 1992)(concluding the failure to preserve the roots of marijuana plants should not warrant exclusion of the evidence in determining the defendant's offense level under Sentencing Guidelines where federal prosecutors did not participate in state authorities' plant collection and storage process); *United States v. Alston*, 832 F.Supp. 1, 5 (D.D.C. 1993)(finding government acted in good faith in helping defense counsel track down a

stolen vehicle after law enforcement had returned the car to its rightful owner before trial and before the defendant had an opportunity to inspect it).

Next, in deciding whether the destroyed evidence was material or exculpatory, courts have looked at the substitutes available to replace the excess physical evidence. Samples of the dangerous substance, photographs, testimony, chemical analyses, and the opportunity for the defendants to review the evidence before its destruction, are some of the substitutes that have been deemed sufficient to replace the original physical evidence. *See United States v. McKie*, 951 F.2d 399, 403 (D.C. Cir. 1991); *United States v. Gonzalez*, 697 F.2d 155, 156 (6th Cir. 1983). For example, in *United States v. Gonzalez*, the appellant contested a court order which permitted the destruction of all but a representative sample of seized precursor chemicals to PCP. *Gonzalez*, 697 F.2d 155, 156 (6th Cir. 1983). The court found that there was no prejudice to the defendant because defense counsel was permitted to conduct its own inspection of the drug, to photograph the full quantity of the chemicals, and was given the opportunity to appear at an evidentiary hearing to assert any basis for retaining the total amount of seized chemicals. *Id.*

Further, in *United States v. McKie*, physical evidence of crack cocaine was lost by the government and was therefore never able to be admitted at trial. *McKie*, 951 F.2d 399, 403 (D.C. Cir. 1991). Instead, the government relied on a DEA lab report to establish the weight and percentage of cocaine base. *Id.* The court found the following sufficient: the drugs were available before trial for the defendant's independent testing, the chemist who performed the test was available for cross-examination, and the laboratory equipment used for the test was available for examination. *Id.* The court

noted that even though the lost evidence was material, the presence of the original physical evidence would not likely exculpate or benefit the defendant in any substantial way because of the availability of secondary evidence. *Id. See also United States v. Chandler*, 894 F.2d 463, No. 88-3110, 1990 WL 6895, at *1-3 (D.C. Cir. Jan. 30, 1990)(concluding that government officers acted in good faith and in accord with their normal practice in destroying all but a representative sample of seized PCP; noting that while appellants did not have an opportunity to weigh the entire seized amount they still had the opportunity to challenge the accuracy and proper operation of the machine used to weigh the PCP); *United States v. Heiden*, 508 F.2d 898 (9th Cir. 1974)(finding that the government's retention of photographs and the testimony of a Border Patrol agent were sufficient secondary evidence in place of a destroyed box and package of marijuana).

This motion is a good faith effort to protect both law enforcement personnel and the public and to abide by DEA policy. In the instant case, as in *Parada*, the request for the destruction of the excess PCP is based on the standard procedure of a government agency, the DEA, which requires disposal of all excess quantities of PCP and the retention of only small one-ounce samples. 289 F.Supp.2d 1291, 1303. The destruction is further justified by the hazardous nature of PCP, the dangers of which were also recognized in *Parada. Id.* Both the escaping vapors and the extreme flammability of ethyl ether pose a threat to law enforcement personnel and the public. In addition, the government fully intends to retain samples, photographs, chemical analyses and additional evidence as a substitute for the excess PCP.

Further, as in *McKie* and *Gonzalez*, samples, secondary evidence, testimony from experts, and additional evidence surrounding the PCP will be made available to the

defendants.  As in *Gonzalez*, where a court order was issued permitting destruction of all but a sample of the seized PCP chemicals, the defendants currently before the Court will be given an opportunity to conduct their own inspection of the drug before its destruction.  *Gonzalez*, 697 F.2d 155, 156 (6th Cir. 1983).  Further, as in *McKie*, both the testimony from the DEA chemists who weigh and analyze the seized PCP, and the laboratory equipment used for the testing, will be available to the defendants for individual examination.  *McKie*, 951 F.2d 399, 403 (D.C. Cir. 1991).  Considering the amount of secondary evidence, the opportunity given to the defendants to examine the DEA equipment and cross-examine any DEA chemists, and the availability of samples for independent testing, there is no reason why excess quantities of the seized PCP should be retained.

**WHEREFORE**, for the foregoing reasons, the United States respectfully requests that this Court enter an Order approving the destruction of the excess seized PCP, to commence within 30 days of the Court's order.

JEFFREY A. TAYLOR
UNITED STATES ATTORNEY

By: _____
WILLIAM J. O'MALLEY, JR.
Assistant United States Attorney

_____
ANTHONY SCARPELLI
Assistant United States Attorney

9

_____
JOHN K. HAN
Assistant United States Attorney

Case 1:07-cr-00153-TFH  Document 60  Filed 07/11/2007  Page 9 of 9

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | : | |
| | : | |
| v. | : | Criminal No. 07-153 (ESH) |
| | : | |
| **LONNELL GLOVER,** *et al.,* | : | |
| **Defendants.** | : | |

# ORDER

Upon motion of the United States to dispose of the excess seized phencyclidine, the Court, having considered the entire record in this matter, finds that given the dangerous nature of phencyclidine, the Drug Enforcement Administration policy requiring destruction of all but a representative sample of the seized drug, and the government's intention to retain secondary evidence, the destruction of excess quantities of the phencyclidine is justified. It is, this _____ day of _____, 2007,

**ORDERED** that the bulk of the seized phencyclidine be destroyed in compliance with the Drug Enforcement Administration policy. It is

**FURTHER ORDERED** that the destruction commence within 30 days of this order.

_____
ELLEN SEGAL HUVELLE
United States District Judge