## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| v. | : | |
| | : | **Criminal No.: 07-153 (TFH)** |
| **LONNELL GLOVER, et al.** | : | |
| | : | |
| | : | |
| Defendants. | : | |

### GOVERNMENT'S OMNIBUS RESPONSE
### TO DEFENDANTS' PRETRIAL MOTIONS

**JEFFREY A. TAYLOR**
**United States Attorney**

By:  **WILLIAM O'MALLEY**
**ANTHONY SCARPELLI**
**JOHN HAN**
**Assistant United States Attorneys**

**United States Attorney's Office**
**OCNT Section**
**555 Fourth St., NW**
**Washington, D.C. 20530**
**202-514-7566**

## TABLE OF CONTENTS

I.      LIST OF DEFENDANTS' PENDING MOTIONS.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

II.     INTRODUCTION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

III.    STATEMENT OF FACTS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

IV.     MOTIONS RE: DISCOVERY. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

        A.      Motions for early disclosure of Brady, Giglio, and Jencks Material. . . . . . . 4

                1.      Lonnell Glover (#230)

                2.      Velma Williams (#239)

        B.      Motions for identity of confidential informants. . . . . . . . . . . . . . . . . . . . 6

                1.      Lonnell Glover (#231)

                2.      Velma Williams (#239)

        C.      Motions for bill of particulars.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

                1.      Velma Williams (#237)

                2.      Charles Gladden (#296)

                3.      John Washington (#263)

        D.      Motions re Co-Conspirator Statements. . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

                1.      Lonnell Glover (#228)

                2.      Velma Williams (#245)

                3.      John Washington (#262)

                4.      John Smith (#213)

        E.      Motions for discovery and Inspection. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

                1.      Velma Williams (#238)

                2.      Herbert Young (#249)

V.      MOTIONS TO SEVER DEFENDANTS AND COUNTS. . . . . . . . . . . . . . . . . . . 17

        A.      Velma Williams (#243)

        B.      Henry Brown (#202)

        C.      Jerome Hampton (#290)

        D.      Lena Brown (#196)

    E.    Charles Gladden (#296)

    F.    John Washington (#261)

    G.    John Smith (#212, #214)

VI.    MOTIONS RE: SUPPRESSION OF EVIDENCE. . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

    A.    Motions to suppress physical evidence. . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

        1.    Lonnell Glover (#252)

        2.    Velma Williams (#242)

        3.    Cornell Glover (#286)

        4.    Ronald Cook (#209)

        5.    Lena Brown (#257)

        6.    John Smith (#194)

        7.    Herbert Young (#247)

        8.    Charles Gladden (#295)

        9.    James Taylor (#234, #235)

        10.    John Washington (#260)

    B.    Motions to suppress statements. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37

        1.    Ronald Cook (#208)

        2.    Lena Brown (#197)

        3.    John Smith (#193)

        4.    Herbert Young (#248)

    C.    Motion to Suppress GPS Evidence. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 42

        1.    John Smith (#192)

VII.    MOTIONS TO DISMISS INDICTMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 47

    A.    Jerome Hampton (#210)

    B.    Hebert Young (#300, #301)

VIII.    CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 51

## LIST OF DEFENDANTS' PENDING MOTIONS

1.    **LONNELL GLOVER**

    a.    Motion for disclosure of 404(b) evidence (#227)

    b.    Motion for disclosure of co-conspirator and co-defendant statements (#228)

    c.    Motion for disclosure of Brady, Giglio & Jencks material (#230)

    d.    Motion for disclosure of identity of informants (#231)

    e.    Motion to suppress physical evidence (#252)

    f.    Motion to suppress evidence obtained from interception of wiretap communications  (#232)

    g.    Motion to suppress "truck bug" (#291, #293)

    h.    Motion to suppress GPS evidence from truck (#292)

    i.    Motion to adopt and conform (#229)

        i.    Supplement to motion to adopt and conform (#289)

2.    **VELMA WILLIAMS**

    a.    Motion for bill of particulars (#237)

    b.    Motion for discovery and inspection (#237)

    c.    Motion for disclosure of confidential informants, Brady/Giglio/Jencks evidence (#239)

    d.    Motion to adopt and conform (#240)

    e.    Motion for leave to file additional motions (#241)

    f.    Motion to suppress evidence from illegal searches (#242)

    g.    Motion to sever counts (#243)

    h.    Motion on admissibility of co-conspirator statements and disclosure of any co-conspirator statements that the government intends to introduce (#243)

    i.    Motion to suppress evidence obtained by illegal electronic surveillance (#250)

    j.    Motion to adopt and conform (#297)

3.    **HENRY BROWN**

    a.    Motion to sever defendants (#202)

    b.    Motion to adopt and conform (#211)

        i.      Supplement to motion to adopt and conform (#288)

**4.    JEROME HAMPTON**

    a.      Motion to dismiss case (#210)

    b.      Motion to sever defendants (#290)

    c.      Motion to adopt and conform (#284)

**5.    CORNEL GLOVER**

    a.      Motion to suppress tangible evidence (#286)

    b.      Motion to adopt and conform (#287)

**6.    RONALD COOK**

    a.      Motion to suppress statements (#208)

    b.      Motion to suppress tangible evidence (#209)

    c.      Motion to adopt and conform (#303, #304)

**7.    LENA BROWN**

    a.      Motion to sever defendants (#196)

    b.      Motion to suppress statements (#197)

    c.      Motion to suppress tangible evidence (#257)

    d.      Motion to join (#236)

        i.      Supplement to motion to join (#236)

**8.    JOHN SMITH**

    a.      Motion to suppress evidence obtained from monitoring a GPS on defendant's truck (#192)

    b.      Motion to suppress statements (#193)

    c.      Motion to suppress illegal search of home (#194)

    d.      Motion to sever defendants (#212)

    e.      Motion to sever counts (#214)

    f.      Motion in limine re co-conspirator statements (#213)

    g.      Motion to join (#216)

        i.      Supplement to motion to join (#280)

**9.    HERBERT YOUNG**

     a.      Motion to suppress evidence (#247)

     b.      Motion to suppress statements (#248)

     c.      Motion for entire discovery (#249)

     d.      Motion to dismiss indictment (#300)

     e.      Motion to dismiss on grounds of speedy trial violations (#301)

     f.      Motion to adopt and conform (#273, #299)

**10.    CHARLES GLADDEN**

     a.      Motion to suppress evidence (#295)

     b.      Motion to dismiss count one or for bill of particulars (#296)

     c.      Motion to adopt and conform (#298)

**11.    JAMES TAYLOR**

     a.      Motion to suppress tangible evidence (#234, #235)

     b.      Motion to adopt and conform (#285)

**12.    JOE BROWN**

     a.      Motion to adopt and conform (#271)

**13.    JOHN WASHINGTON**

     a.      Motion to suppress physical evidence (#260)

     b.      Motion to sever defendants (#261)

     c.      Motion to exclude statements and request for Bourjaily Hearing (#262)

     d.      Motion for bill of particulars (#263)

# I.  INTRODUCTION

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, hereby responds to defendants' pretrial motions.  As grounds for this omnibus response, the government relies on the following points and authorities, and any other such points and authorities that are permitted at a hearing on these motions.

In a separate pleading (#312), the government responds to Lonnell Glover's Title III and GPS motions (#232, #291, #293); and Velma Williams' Title III motion (#250).

Also in another separate pleading, the government responds to defendants' motion for 404(b) notice (#227).

# II.  STATEMENT OF FACTS

In the fall of 2005, law enforcement developed information that Anthony Maurice Suggs was distributing large quantities of Phencyclidine (PCP) in the Washington, D.C. area.  Law enforcement officers collected substantial evidence that Suggs was actively distributing gallons of PCP and cocaine.  (Suggs and six other defendants were indicted in Criminal Case 07-152 with Conspiracy to Possess with Intent to Distribute and to Distribute One Kilogram or more of Phencyclidine.  Those cases have been resolved).

After obtaining credible evidence of Suggs' drug trafficking, the government prepared an affidavit in support of wire interceptions over the cellular telephone used by Suggs, and on January 8, 2007, the Honorable Rosemary M. Collyer, United States District Court Judge for the District of Columbia, found probable cause for the interceptions of Suggs' telephone, and approved the interceptions.  Within two weeks of intercepting Suggs' telephone calls, law enforcement officers

determined that Suggs' supplier of PCP was Lonnell Glover.

The government prepared an affidavit in support of wire interceptions over the cellular telephone used by Glover, and on February 9, 2007, Judge Collyer found probable cause for interceptions over Glover's telephone, and approved the interceptions. Also, after obtaining credible evidence that Glover used his pickup truck as an integral mode of transporting drugs, the government prepared an affidavit in support of oral interceptions in and in the vicinity of Glover's pickup truck, and on March 19, 2007, Judge Collyer found probable cause for interceptions in and in the vicinity of Glover's pickup truck, and approved the interceptions.

Shortly after law enforcement began intercepting communications over Glover's cellular telephone, they intercepted calls from the defendants in this case. In a coded manner, Glover and the other defendants spoke over Glover's cellular telephone and agreed to meet so that Glover could supply them with PCP and heroin, or for purposes of the co-defendants supplying Glover with PCP or heroin. Glover also spoke to several of the co-defendants inside his pickup truck, and several of those conversations were lawfully intercepted. Inside the pickup truck, Glover and his co-defendants spoke much more openly about their drug trafficking enterprise.

On June 12, 2007, a District of Columbia federal grand jury returned a one-count indictment against Lonnell Glover, Velma Williams, John Smith, Herbert Young, Cornell Glover, Cooleridge Bell, Charles Gladden, Daniel Thompson, Henry Brown, Leslie Wood, Christian Donaldson, Diane Holmes, James Taylor, Jerome Hampton, Joe Brown, Jr., John Washington, Ronald Cook, Lena Brown, and John Crum, charging them with Conspiracy to Possess with Intent to Distribute and to Distribute One Kilogram or More of Phencyclidine and Heroin, in violation of 21 U.S.C. Sections 841(a)(1), and 841(b)(1)(A)(iv), and 841(b)(1)(A)(I), and 18 U.S.C. Section 2.

2

On June 19, 2007, law enforcement officers arrested Lonnell Glover, Williams, Smith, Young, Thompson, Wood, Donaldson, Holmes, Taylor, Hampton, Cook, Lena Brown, and Crum. Cornell Glover (who was in custody on an unrelated charge at that time), Gladden, Henry Brown, Joe Brown, Jr., and John Washington were arrested on a later date. Bell still remains at large.

At the time of the defendants' arrests, numerous search warrants (and consent searches) were executed on the defendants' residences and vehicles. On November 8, 2007, the grand jury returned a superseding indictment adding thirteen additional charges based on the drugs and guns recovered from those searches.

### III.  MOTIONS RE: DISCOVERY

**A.  Motions for Early Disclosure of Brady, Giglio, and Jencks Material**

Defendants Lonnell Glover (#230) and Velma Williams (#239) move that the government be compelled to give early disclosure of Brady, Giglio, and Jencks material.

The government has provided extensive discovery in this case.  The government knows of no outstanding Brady material.  Should the government learn of any Brady material, the government will promptly disclose it to defense counsel.

With respect to Giglio and Jencks material, the government need not disclose this material until after the witness has testified on cross-examination.  See United States v. Tarantino, 846 F.2d 1384, 1414 (D.C. Cir. 1988).  However, to avoid undue delays during trial, the government proposes the following trial schedule.  The government proposes that the Court hold trial from Monday through Thursday.  No trial on Friday.  At the end of the day on Thursday, the government will announce its anticipated line-up of witnesses for the following week.  At that time, the government will provide any Giglio and Jencks material that has not already been disclosed for the witnesses scheduled for the following week.  (Of course, the witness line-up may change depending on scheduling conflicts and events during trial).

With respect to law enforcement witnesses, there is minimal, if any, outstanding Giglio/Jencks material.  With respect to civilian cooperators, there are security concerns if their identities and expected testimony are made public in advance of trial.  In this case, the police recovered numerous guns, ammunition, body armor, and thousands of dollars in cash.  The defendants are each facing mandatory minimums of at least 10 years imprisonment; some defendants are facing 20 years imprisonment; and some are facing mandatory life without release. Based on the

4

evidence recovered in this case, the defendants' organization has the tools, money, resources, and motivation to interfere with the testimony of civilian cooperators. The government submits that delaying the disclosure of information relating to civilian cooperators is necessary to minimize the potential for witness intimidation or harm. The "Thursday" disclosure was approved by the court in <u>U.S. v. Eiland</u>, 2006 WL 516743, *8 (D.D.C. 2006) (Lamberth, J.), and <u>U.S. v. Edelin</u>, 128 F.Supp.2d 23, 31 (D.D.C. 2001) (Lamberth, J.)

Accordingly, these defense motions should be denied. No evidentiary hearing is required on these motions.

**B.  Motions for Disclosure of Identity of Confidential Informants**

Defendants Lonnell Glover (#231) and Velma Williams (#218) move this Court to order the United States to provide to them the identity of any informants, co-conspirators, and witnesses who have provided incriminating information against them or have knowledge of their participation (or lack thereof) in the charged conspiracies.   The motions should be denied because the government's interest in protecting the safety of potential witnesses far outweighs the defendants' interest in preparing for opening statements and cross-examinations well in advance of trial.

The government is not required to disclose the names of potential witnesses, including confidential informants, well in advance of trial.  *See United States v. Edelin*, 128 F. Supp. 2d 23, 31 (D.D.C. 2001) ("Withholding the names of potential witnesses until several days before those witnesses testify is not a violation of a criminal defendant's constitutional rights."); *United States v. Higgs*, 713 F.2d 39, 44 (3d. Cir. 1983), *cert. denied*, 464 U.S. 1048 (1984) (holding that turning over *Giglio* material on the day the government witnesses are scheduled to testify satisfies defendants' rights to a fair trial).   Although disclosing the identities of confidential informants at this time may assist the defendant in preparing a case, the government is allowed to withhold making that disclosure.  *See Roviaro v. United States*, 353 U.S. 53 (1957) (holding that the government enjoys a qualified, though "time-honored" privilege to withhold the identity of its informants from criminal defendants);  *United States v. Brodie*, 871 F.2d 125, 128 (D.C. Cir. 1989).  Thus, in making the determination whether disclosure of a witness's identity to a defendant is necessary, the Court must balance the public's interest in law enforcement and protecting the informant's identity against the defendant's right to prepare a defense.  *See Roviaro*, 353 U.S. at 62; *United States v. Warren*, 42 F.3d 647, 654 (D.C. Cir. 1994).  The defendant bears the "heavy burden" of proving that disclosure

6

of the informant's identity is necessary and relevant to the defense. *Warren*, 42 F.3d at 654; *United States v. Gaston*, 357 F.3d 77, 84 (D.C. Cir. 2004). To meet this burden, the defendant must allege specifically how the informant will help establish his/her innocence: "mere speculation that the informer might possibly be of some assistance is not sufficient" to meet this burden. *United States v. Skeen*, 449 F.2d. 1066, 1071 (D.C. Cir. 1971); *United States v. Magnum*, 100 F.3d 164, 172 (D.C. Cir. 1996).

Here, the defendants have not demonstrated the burden of proof required by *Warren* and *Skeen* to compel the disclosure of the identities of potential government witnesses, including confidential informants. Defendants fail to allege with any degree of specificity how an early disclosure of potential witnesses' identities will help establish his/her innocence in the case.

With respect to the identities of the cooperating informants who participated in transactions with the defendants, the defendants are already aware of their identities. To the extent the defendants are not aware of the identity of those informants, their reliance on *Roviaro* to secure this disclosure is misplaced. *Roviaro* arose out of a situation in which the informant who participated in the charged offense was neither made available to the defendant nor testified at trial. In the instant case, if any participating informant does not testify at trial, the government will make that informant available to the defendants at their request. *See United States v. Palfrey*, 515 F. Supp. 2d 120, 126 (D.D.C. 2007) (holding that pretrial disclosure of the identities of informants is unnecessary if the government represented it will call the informants at trial and will disclose to defendant at the commencement of trial the identities of any informants whom it does not call); *United States v. Foster*, 815 F.2d 1200, 1202-03 (8th Cir. 1987) (denial of defendant's motion to disclose informant's identity proper where informant testified at trial and was subject to cross-examination).

7

As stated above, the government will not disclose the identity of informants to protect their safety from this drug organization and from the drug community at large that seeks to discourage "snitching."

Accordingly, the defendants motions to reveal the identity of confidential informants should be DENIED.  No evidentiary hearing is required on these motions.

### C.  Motions for Bill of Particulars

Defendants Velma Williams (#237), Charles Gladden (#296), and John Washington (#263) move the Court to order the government to produce a bill of particulars.

Rule 7(f) of the Federal Rules of Criminal Procedure authorizes the Court to order the government to file a bill of particulars.  The purpose of a bill of particulars is "to ensure that the charges brought against a defendant are stated with enough precision to allow the defendant to understand the charges, prepare a defense, and perhaps also to be protected against retrial on the same charges."  United States v. Butler, 822 F.2d 1191, 1193 (D.C. Cir. 1987); United States v. Esquivel, 755 F. Supp. 434, 436 (D.D.C. 1987).  The government, however, may not be compelled to provide a bill of particulars disclosing the manner in which it will attempt to prove the charges, the precise manner in which a defendant committed the crime charged, or to give a preview of its evidence.  See United States v. Torres, 901 F.2d 205, 233-34 (2d Cir. 1990) ("[a]cquisition of evidentiary detail is not a function of a bill of particulars"); United States v. Armocida, 515 F.2d 49, 54 (3d Cir. 1975) (bill of particulars is not intended as a vehicle for "wholesale discovery of the Government's evidence").  Nor should the Court compel a bill of particulars to force the government to reveal a theory of its case that the defense could then use to limit the government's presentation of its case at trial.  United States v. Torres, 901 F.2d at 234; United States v. Burgin, 621 F.2d 1352 (5th Cir. 1980).  The constitutional right supporting a bill of particulars request is simply the right to know the offense with which a defendant is charged, not to know the details of how it will be proved.  United States v. Kendall, 665 F.2d 126, 135 (7th Cir. 1981).

Particularly in conspiracy cases, courts have routinely ruled that defendants do not need detailed evidence about the conspiracy in order to adequately prepare for trial.  See, e.g., United

States v. Jimenez, 824 F. Supp. 351, 363-34 (S.D.N.Y. 1993). For example, courts have consistently held that the government is under no obligation to file a bill of particulars detailing facts regarding the existence and formation of the conspiracy. United States v. Rosenthal, 793 F.2d 1214, 1227 (11th Cir. 1986); United States v. Deaton, 448 F. Supp. 532, 537 (N.D. Ohio 1978). Nor is the government required to specify every overt act of the conspiracy that it intends to prove at trial, Wong Tai v. United States, 273 U.S. 77 (1926); United States v. Carroll, 510 F.2d 507, 509 ($2d$ Cir. 1975), or to disclose exact times and locations of acts committed in furtherance of the conspiracy. United States v. Long, 449 F.2d 288, 294-95 (8th Cir. 1971). In United States v. Edelin, a RICO conspiracy case, this Court denied defendants' motion for a bill of particulars and reaffirmed the principle that "[i]t is not the function of a bill of particulars to provide a detailed disclosure of the government's evidence in advance of trial." United States v. Edelin, 128 F. Supp.2d 23, 37 (D.D.C. 2001) (quoting Overton v. United States, 403 F.2d 444, 446 (5th Cir. 1968)). Moreover, where extensive discovery has been made available to defendants, a bill of particulars is unnecessary. United States v. Eiland, 2006 WL 516743 (D.D.C. 2006).

In this case, the government has provided the defendants in this narcotics conspiracy case with extensive discovery that includes: all of the wiretap calls from Anthony Sugg's telephone; all of the wiretap calls from Lonnell Glover's telephone; all of the recorded conversations from the "truck bug" in Lonnell Glover's pick-up truck; all of the Title III "line sheets" which include summaries of the conversation, names, dates, and telephone numbers of the above-mentioned Title III interceptions; all paperwork and photos from search warrants; all DEA-7 lab reports for the narcotics; all surveillance video; and all custodial statements of defendants; and all physical evidence is available for inspection. Moreover, the government has provided each defendant with a "filter"

10

that contains the wiretap calls that are applicable to that particular defendant.

The combination of the indictment and the extensive discovery is sufficient "to allow the defendant to understand the charges, prepare a defense, and perhaps also to be protected against retrial on the same charges." United States v. Butler, 822 F.2d 1191, 1193 (D.C. Cir. 1987).

Accordingly, the defendants motions for a bill of particulars should be DENIED. No evidentiary hearing is required on these motions.

### D. Motions re Co-Defendant and Co-Conspirator Statements

Defendants Glover (#228), Williams (#243), Washington (#262), Smith (#213) have filed several motions regarding statements. Specifically, defendants have moved for (1) pretrial production of co-defendant statements; (2) pretrial production of co-conspirator statements; and (3) pretrial determination of the propriety of the co-conspirator statements. Defendants' arguments are without merit.

**Co-Defendant Statements**: Defendants move the Court for an order requiring the government to provide a preview of any incriminating statements made by co-defendants and to suppress such statements. Defendants' motion are based on the Supreme Court's decision in Bruton v. United States, 391 U.S. 123 (1968), holding that the admission of a non-testifying co-defendant's confession, which explicitly implicated the defendant, was prejudicial error. See United States v. Applewhite, 72 F.3d 140, 145 (D.C. Cir. 1996) (Confrontation Clause problem arises if one defendant's statement "expressly implicat[es]" another defendant), quoting Bruton, 391 U.S. at 124 n.1.

It is clear, however, that Bruton does not apply where a statement is otherwise admissible. United States v. Photogrammatric Data Services, Inc. 259 F.3d 229, 243-44 (4th Cir. 2001); United States v. Alcantar, 271 F.3d 731, 739-40 (8th Cir. 2001). For example, statements of co-conspirators made in furtherance of the conspiracy are not hearsay and are admissible against all co-conspirators. United States v. (Joseph) Jackson, 627 F.2d 1198, 1216 (D.C. Cir. 1980). To admit such statements, the government need only prove by a preponderance of the evidence that a conspiracy existed between the defendant and the declarant and that the statement was made in furtherance of the conspiracy. United States v. Beckham, 968 F.2d 47, 51-52 (D.C. Cir 1992) (citing Bourjaily v.

12

United States, 438 U.S. 171, 175 (1987)).  In this case, the Title III interceptions (wiretap and truck

bug), that the government intends to play at trial are all co-conspirator statements.  Therefore, there

is no Bruton problem with this set of evidence.

      With regard to the custodial statements made by some defendants upon their arrest, the

government does not intend to use any statement that implicates another defendant in that particular

trial.  Therefore, there is no Bruton problem with this set of evidence either.

      In short, the government does not intend to use any statement that would raise a Bruton issue.

      **Co-Conspirator Statements**:  Defendants move the Court for an order directing the

government to provide discovery of all co-conspirator statements the government intends to offer

pursuant to Rule 801(d)(2)(E) of the Federal Rules of Evidence.  This motion is without merit.

      There is no authority for the Court to compel discovery of co-conspirator statements.[1]

Defendant cites Rule 16(a)(1)(A) and the decision in United States v. Thevis, 84 F.R.D. 47, 56 (N.D.

Ga. 1979) (acknowledging that its reading of Rule 16 was "extremely broad"), in support of his

request for discovery of co-conspirator statements.    This argument, however, is foreclosed by

controlling authority in this circuit.    United States v. Tarantino, 846 F.2d 1384, 1418 (D.C. Cir.),

cert. denied, 488 U.S. 840 (1988).  In Tarantino, the D.C. Circuit stated:

> We believe, however, that we are without authority to order such discovery. Nothing in the
> Federal Rules of Evidence or in the Jencks Act requires such disclosure--we think it clear
> that as used in Fed. R. Crim. P. 16(a)(1)(A) the phrase "statements made by the defendant"
> does not include statements made by co-conspirators of the defendant, even if those
> statements can be attributed to the defendant for purposes of the rule against hearsay. Once

---

[1]  Such statements are admissible as non-hearsay if two requirements are met.  First, the
statement must have occurred during the existence of the conspiracy, and second, the statements
must have been made in furtherance of the conspiracy.  Fed. R. Evid. 801(d)(2)(E).  The
government bears the burden of satisfying these requirements by a preponderance of the evidence
if it offers statements pursuant to this rule.

appellant's imaginative reading of 16(a)(1)(A) is rejected, no other authority is suggested for this type of discovery order. Under our law, the adversary system is "the primary means by which truth is uncovered." Bagley, 473 U.S. at 675, 105 S. Ct. at 3380. We decline to extend the defendant's right to discovery beyond that required by statute or the Constitution. We note this result is in agreement with every other circuit that has examined the question.

Id. at 1418.  See also United States v. Orr, 825 F.2d 1537 (11th Cir.1987); United States v. Roberts, 811 F.2d 257 (4th Cir.1987) (en banc); United States v. Percevault, 490 F.2d 126 (2d Cir.1974); 8 J. MOORE, MOORE'S FEDERAL PRACTICE ¶ 16.04[1] at 16-54, 55 (2nd ed. Nov. 1986 Rev.).

In any event, the substantial portion of co-conspirator statements that the government intends to introduce at trial have already been provided in discovery on the Suggs wiretap, Glover wiretap, and Glover truck bug.  The only co-conspirator statements that have not yet been disclosed will be testified to by cooperating witnesses.  The government will, of course, disclose such statements to the extent disclosure is required by the Jencks Act or Brady.

The propriety of co-conspirator statements as exceptions to the hearsay rule has not been undermined by Crawford v. Washington, 541 U.S. 36 (2004).  The conversations intercepted over a Title III wiretap are simply not "testimonial" for purposes of Crawford.  United States v. Hendricks, 395 F.3d 173 (3rd Cir. 2005).

**Pretrial Determination of Conspiracy:**      Defendants seek a pretrial hearing to determine whether the co-conspirator statements may properly be admitted against them.  There is, however, no authority that compels the Court to hold such a hearing and, moreover, such a hearing would be a waste of judicial resources considering that the same evidence will be presented at trial.

Federal Rule of Evidence 801(d)(2)(E) provides that statements of co-conspirators made in furtherance of the conspiracy are not hearsay.  A statement made by a co-conspirator in furtherance of the conspiracy is admissible against all co-conspirators.  United States v. (Joseph) Jackson, 627

14

F.2d 1198, 1216 (D.C. Cir. 1980).  To admit such statements, the government need only prove by a preponderance of the evidence that a conspiracy existed between the defendant and the declarant and that the statement was made in furtherance of the conspiracy.  United States v. Beckham, 968 F.2d 47, 51-52 (D.C. Cir 1992) (citing Bourjaily v. United States, 438 U.S. 171, 175 (1987)).

Defendants cite no case holding that the Court must decide the admissibility of co-conspirator statements in advance of the trial.  Indeed, appellate courts have routinely upheld the practice of deferring the determination of a defense motion until the trial if that motion requires "deciding issues of fact that are inevitably bound up with evidence about the alleged offense itself."  United States v. Wilson, 26 F.3d 142, 159 (D.C. Cir. 1994), cert. denied, 514 U.S. 1051 (1995).  In United States v. Gantt, 617 F.2d 831, 845 (D.C. Cir. 1980), the D.C. Circuit upheld the trial court's refusal to hold a pretrial hearing regarding co-conspirator statements.  The court explained that "[a]s a practical matter, to avoid what otherwise would become a separate trial on the issue of admissibility, the court may admit declarations of co-conspirators 'subject to connection.'" Id.; see also Jackson, 627 F.2d at 1218 (trial courts are not required to hold "mini-trials" on the conspiracy issue before the conditional admission of a co-conspirator's statements); United States v. Edelin, 128 F. Supp.2d 23, 45-46 (D.D.C. 2001) (holding that "hearing to make an advance determination of conspiracy is unnecessary for the Court's determination by a preponderance of evidence that a conspiracy existed").

Accordingly, the defendants' motions for pretrial determination of the propriety of co-defendant and co-conspirator statements should be DENIED.  No evidentiary hearing is required on these motions.

### E.  Motions for Discovery and Inspection

Defendant Williams (#238) and Young (#249)  move this Court to order the United States to provide discovery under Rule 16.

The government is aware of its discovery obligations under Rule 16 and has complied.  If defendants believe that they are missing something to which they are entitled, they should specify those items with particularity and the government will endeavor to work with defendants in satisfying their requests.

Accordingly, defendants' motions to compel the government to comply with discovery should be DENIED.  No evidentiary hearing is required on these motions.

### IV.  MOTIONS RE: SEVERANCE

Defendants Velma Williams (#243), Henry Brown (#202), Jerome Hampton (#290), Lena Brown (#196), John Smith (#212, #214), and John Washington (#214) move for severance of defendants and/or counts.   These motions, however, fail to undermine the propriety of the initial joinder of the defendants and counts in the indictment, and also fail to raise arguments that would warrant a severance.

#### A.     The Defendants and the Counts are Properly Joined under Rule 8

In cases with multiple defendants and multiple offenses, the "weight of authority in this circuit and elsewhere regards Rule 8(b) as providing the sole standard for determining the permissibility of joinder of offenses."  United States v. Wilson, 26 F.3d 142, 153 n. 4 (D.C. Cir.1994) (citations omitted); see also United States v. Perry, 731 F.2d 985, 989 (D.C. Cir. 1984); United States v. Jackson, 562 F.2d 789, 793-94 (D.C. Cir. 1977).

Rule 8(b) reads as follows:

> Two or more defendants may be charged in the same indictment or information if they are alleged to have participated in the same act or transaction or in the same series of acts or transactions constituting an offense or offenses.   Such defendants may be charged in one or more counts together or separately and all of the defendants need not be charged in each count.

Fed R. Crim. P. 8(b).  This Circuit construes Rule 8(b) broadly in favor of joinder.  United States v. Nicely, 922 F.2d 850, 853 (D.C. Cir. 1991) ("[T]his circuit's law makes it difficult to prevail on a claim that there has been a misjoinder under Rule 8(b)").

The District of Columbia Circuit has held that acts or transactions form a "series" within the meaning of Rule 8(b) if they "are connected together or constitut[e] part of a common scheme or plan."  Perry, 731 F.2d at 990 (internal quotation marks and citations omitted). The touchstone for

analysis under Rule 8(b) is whether there exists "a logical relationship between the acts or transactions within the series." United States v. Nicely, 922 F.2d at 853. "Rule 8(b) requires only that the government 'allege,' not prove, the facts necessary to sustain joinder." United States v. Halliman, 923 F.2d 873, 883 (D.C. Cir. 1991) (citations omitted). In determining the propriety of joinder, "this circuit permits a trial court to consult the indictment as well as any other pretrial evidence offered by the Government." United States v. Spriggs, 102 F.3d 1245, 1255 (D.C. Cir. 1997) (quoting United States v. Wilson, 26 F.3d 142, 153 (D.C. Cir. 1994)).

With respect to conspiracy cases, joinder is particularly appropriate. "[T]he standard enunciated in Rule 8(b), that joinder of offenses or defendants is proper where the alleged acts are part of the same series of acts or transactions, may be satisfied by the indictment alone where there is a conspiracy alleged." United States v. Gray, 173 F.Supp.2d 1, 19 (D.D.C. 2001) (citing United States v. Spriggs, 102 F.3d 1245 (D.C. Cir.1996) (citing United States v. Perry, 731 F.2d 985 (D.C. Cir.1984)). Proper joinder of defendants exists where an indictment charges multiple defendants with a single conspiracy, and also charges some of the defendants with substantive counts arising out of that conspiracy. Edelin, 118 F.Supp.2d at 40 (citing United States v. Simon, 839 F.2d 1461, 1472 (11th Cir.1988)); see Gray, 173 F.Supp.2d at 5 ("joint trials are the preferred method when multiple defendants are connected by a single alleged conspiracy"). There is no reason to duplicate the effort and expenditure of resources by the judicial system by requiring multiple trials arising out of one criminal enterprise or common scheme.

Single v. Multiple Conspiracies: Defendant Williams (#243) and Gladden (#296) argue that the narcotics conspiracy count in the indictment is actually multiple conspiracies (one involving PCP and one involving Heroin) rather than a single conspiracy. Therefore, they argue that the defendants

18

are misjoined in that count.

In Tarantino, the Court listed several factors to be considered in determining whether the evidence at trial established a single conspiracy or multiple independent conspiracies. These factors include: (1) whether the conspirators shared a common goal; (2) the degree of dependence inherent in the conspiracy, i.e., whether the nature of the conspiracy allows for an inference that the conspirators knew of their link to other conspirators; and (3) the overlap of participants in the various operations and the presence of core participants linked to all the defendants. Tarantino, 846 F.2d at 1393; see Gaviria, 116 F.3d at 1517.

In this case, all defendants have been indicted in Count 1 for conspiracy to distribute and possess with the intent to distribute heroin and PCP (the "drugs"). First, they shared the common goal of making money from the sale of drugs through Lonnell Glover's distribution network. Indeed, the common goal in this case is essentially the same as the common goal in Tarantino, 846 F.2d at 1393 (common goal of the conspirators was "the possession and distribution of narcotics for profit."), Mathis, 216 F.3d 18, 23 (D.C. Cir. 2000) ("participants shared a common goal to distribute drugs for profit in the District"), and Gaviria, 116 F.3d at 1515 ("all the codefendants participated in a single conspiracy with the goal of distributing large quantities of cocaine).

Second, there is a high degree of dependance inherent in this conspiracy. Certain defendants obtained the drugs in wholesale quantities outside of Washington, D.C.; certain defendants smuggled the drugs to the D.C. area; certain defendants managed the distribution network in the D.C. area; and certain defendants distributed the drugs to others in the D.C. area. The nature of the drugs and distribution network rely on the dependance of many others to get the goods from "farm to market."

Third, Lonnell Glover is a core participant of this narcotics conspiracy. The other defendants

19

participated in this conspiracy by either: (1) supplying the drugs to Lonnell Glover; (2) purchasing the drugs from Lonnell Glover; or (3) assisting Lonnell Glover in his drugs business. Lonnell Glover is the common denominator or "common thread" that links all these defendants and charges together. See United States v. Edelin, 118 F.Supp.2d 36, 39 - 40 (D.D.C. 2000) (citing United States v. Morales, 868 F.2d 1562, 1568-69 (11th Cir.1989) ("Joinder of multiple defendants is proper whenever there is a 'common thread' between the actions charged against them") and United States v. Saget, 991 F.2d 702, 707 (11th Cir.1993)).

Finally, the fact that the conspiracy involves two different types of drugs does not convert it from a single conspiracy to multiple conspiracy. In *U.S. v. Eiland*, 525 F.Supp.2d 41,45 (D.D.C. 2007), the jury found a single narcotics conspiracy even though the defendants dealt with both cocaine and heroin. In denying defendants motions for new trial, the trial judge similarly found that the evidence supported a single conspiracy.

Pursuant to Rule 8b, all defendants were properly joined in this indictment because they each participated in a series of transactions that sought to distribute drugs in the Washington, D.C. area through Lonnell Glover's distribution network.

### B.     Severance is Not Warranted under Rule 14

A trial judge has wide discretion in determining severance. United States v. Butler, 822 F.2d 1191, 1191 (D.C. Cir. 1987). The Court must also consider whether the risk of unfair prejudice that may result from a joint trial warrants severance under Rule 14 of the Federal Rules of Criminal Procedure. The relevant portion of Rule 14 reads as follows:

> If it appears that a defendant or the government is prejudiced by a joinder of offences or defendants in an indictment or information or by such joinder for trial together, the court may order an election or separate trials of counts, grant a severance of

defendants or provide whatever other relief justice requires.

Fed R. Crim P. 14.  As discussed above, the Court should also consider the judicial system's strong and legitimate interest in efficient and expeditious proceedings when making a severance determination.  United States v. Long, 905 F.2d 1572 (D.C. Cir.), cert. denied 499 U.S. 948 (1990). Joinder of counts and defendants is designed to promote judicial economy and efficiency by avoiding multiple trials, and there is a strong preference for joint trials in the federal system where that can be accomplished without substantial prejudice to a specific trial right of the defendant.  Zafiro v. United States, 506 U.S. 534 (1993).  The decision to sever falls with the discretion of the trial court, and the balance is to be struck in favor of joint trials. United States v. Manner, 887 F.2d 317, 324 (D.C. Cir. 1989); United States v. Bruner, 657 F.2d 1278, 1288 - 90 (D.C. Cir. 1981).  Rule 14 even countenances some prejudice to a defendant from a joint trial.  Therefore, severance is not required simply because a defendant might have a better chance of acquittal if tried separately.  Halliman, 923 F.2d at 884 (citing Manner, 887 F.2d at 324).  Salient factors the Court should consider, and which militate against severance, include; (1) the presentation of the same evidence; (2) testimony from the same witnesses; and (3) the same illegal conduct.  United States v. Manner, 887 F.2d 317 (D.C. Cir. 1989), cert. denied 493 U.S. 1062 (1990).  In short, "a substantial public interest supports a joint trial" in this case.  United States v. Friedman, 445 F.2d 1076, 1082 (9th Cir.), cert. denied, 404 U.S. 958 (1971).  Appellate courts will review denials of severance on "abuse of discretion" standard. United States v. Lane, 474 U.S. 438, 449  n.12 (1986).

In conspiracy cases especially, severance should be the rare exception rather than the rule. "Rarely, if ever, will it be improper for co-conspirators to be tried together."  United States v. Jackson, 64 F.3d 1213, 1217 (8th Cir. 1995), cert. denied, 516 U.S. 1137 (1996) (citations omitted).

This is true even if all the conspirators are not charged in each, or all, the substantive counts. Schaffer v. United States, 362 U.S. 511, 512-13 (1960); United States v. Leach, 613 F.2d 1295, 1303 (5th Cir. 1980).

First, defendants Williams (#243) and Smith (#212) argue that they will be prejudiced by the presentation of evidence of two types of drugs (PCP and Heroin), when the allegation against them pertain only to one of those types of drugs. Velma Williams asserts "Based upon the discovery disclosed thus far, the only allegations of conspiracy against Ms. Williams pertain to the distribution of phencyclidine. There is no evidence connecting Ms. Williams to the distribution of heroin." (#222 at 4). Conversely, John Smith argues that the government's theory against him is that he obtained heroin from Lonnell Glover and that "there is no evidence that Smith ever possessed, distributed, or conspired with others to distribute PCP." (#212 at 3). Because of the recent division of the defendants into two trial groups, these severance arguments are now moot.

Due to the large number of defendants remaining for trial, the Court divided the defendants into two trial groups for administrative reasons. The first trial group consists of defendants who were primarily involved with PCP: Lonnell Glover, Velma Williams, Henry Brown, Cornell Glover, Jerome Hampton, Ronald Cook, and Lena Brown. The second trial group consists of defendants who were primarily involved with heroin: John Smith, Herbert Young, Charles Gladden, James Taylor, Joe Brown, and John Washington. Because each trial group is based on a particular drug (PCP or Heroin), the potential "spill-over" prejudice from evidence of the other drugs is minimized. Therefore, the theses severance arguments are now moot.

Second, all defendants (Williams, Brown, Hampton, Washington, and Smith) argue that they will be prejudiced because of the "disparity of evidence" between them and other defendants.

22

Specifically, they argue that the substantial evidence that the government will present against some defendants will have a "spill-over" effect on them (on which the government has little evidence). This argument is speculative at best.  Defendants fail to provide any reason that the jury will be unable to follow the Court's instruction to the jury to "compartmentalize" the evidence against each particular defendant, and to give each defendant a fair trial.  *United States v. Eiland*, 406 F.Supp.2d 46, 53-54 (D.D.C. 2005) (denying motion to sever based on disparity of evidence).

Along these same lines, the defendants also argue that they will be prejudiced by the "disparity" in their alleged minor roles in the conspiracy as compared to the major roles of other defendants.  The various roles of this narcotics conspiracy, however, are not so drastically different to create unfair prejudice.  Severance is not appropriate simply because all the conspirators did not participate in all phases of the conspiracy, Blumenthal v. United States, 332 U.S. 539, 556-57 (1947), or because one defendant's role in the conspiracy was smaller or less important than another's.  United States v. Neresian, 824 F.2d 1294 (2d Cir.), cert. denied, 484 U.S. 958 (1987); United States v. Perholtz, 657 F. Supp. 603 (D.D.C. 1986) (defendants need not be equally involved before they may be tried together); United States v. Ianniello, 621 F.Supp. 1455, 1477-78 (S.D.N.Y. 1985) (fact that defendant plays minor role in RICO conspiracy does not entitle him to severance). "[J]oinder is presumed despite the fact that the evidence may show that some defendants were 'kingpins' and others were less active."  United States v. Gray, 117 F.Supp.2d 1, 10-11 (D.D.C. 2001).

Third, defendants Henry Brown and Velma Williams argue that they will be prejudiced by being tried with defendants who are charged with possession of firearms offenses.  Once again, nothing indicates that the jury will be unable to follow the Court's instruction to compartmentalize

the evidence and charges against each particular defendant. <u>Eiland</u>, 406 F.Supp. at 53-54. Indeed, in <u>Eiland</u>, the Court denied motions to sever where some defendants were charged with murder and other co-defendants were not. Mere possession of firearms in this case certainly does not exceed the potential prejudice of murder which was denied in <u>Eiland.</u>

Fourth, defendant Smith argues that his narcotics conspiracy count should be severed from his felon in possession of a firearm count because the jury should not consider his prior felony conviction in the conspiracy offense. Once again, a proper instruction from the Court will ensure that the jury considers his prior felony conviction for the appropriate offense.

Finally, defendant Washington argues that certain evidence would not be admissible against him if he was tried alone. Specifically, he points to a conversation that was recorded by the truck bug in which Lonnell Glover tells Christian Donaldson to learn how to package and sell heroin from defendant Washington. He claims that this is a <u>Bruton</u> issue. However, as discussed above, the government intends to offer this recorded conversation as a co-conspirator statement which extinguishes the potential <u>Bruton</u> issue.

Accordingly, defendants' motions to sever defendants and counts should be DENIED. No evidentiary hearing is required on these motions.

24

## V.  MOTIONS RE: SUPPRESSION OF EVIDENCE

### A.  Motions to Suppress Physical Evidence

Several defendants seek the suppression of physical evidence obtained from the execution of search warrants or discovered in conjunction with their arrest.  The requests for suppression are based upon various legal theories and summarily examined in the following sections.

### 1.    Law Enforcement Officers Executed Timely and Lawful Search Warrants for Each of the Locations Searched.

Defendants Lena Brown (Document 257), Cook (Document 209), Lonnell Glover (Document 252), Smith (Document 194), Young (Documents 247 & 247-2), and Taylor (Document 234) seek suppression of all physical evidence seized from the following locations, based on the alleged expiration of the search warrants:

| Location Searched | Defendant |
|---|---|
| 905 Glen Willow Drive #7 | Lena Brown (Document 257) |
| 634 Capitol Heights Boulevard | Ronald Cook (Document 209) |
| 4908 Brentley Road | Lonnell Glover (Document 252) |
| 1998 Chevrolet pickup truck | Lonnell Glover (Document 252) |
| 2002 GMC Denali XL1 | Lonnell Glover (Document 252) |
| 3723 Grant Place, N.E. | John Smith (Document 194) |
| 1375 Fairmont Street, N.W., 809 | Herbert Young (Documents 247 & 247-2) |
| 2518 Q Street, N.E. | Herbert Young (Documents 247 & 247-2) |
| 905 Chatsworth Drive | James Taylor (Document 234) |

However, law enforcement officers relied on valid search warrants issued shortly before the searches commenced.

On June 8, 2007, Magistrate Judge John Facciola from the United States District Court for

25

the District of Columbia issued search warrants for 3723 Grant Place, N.E., 1375 Fairmont Street, N.W., 809, and 2518 Q Street, N.E. On June 15, 2007, law enforcement officers obtained renewed search warrants from Magistrate Judge Facciola, which were executed on June 19, 2007. The confusion may have occurred because the government inadvertently sent as part of discovery, the search warrants approved on June 8, not the June 15 search warrants. On August 21, 2008, the government provided defense counsel with the June 15 search warrants.

On May 25, 2007 and June 4, 2007, Magistrate Judge William Connelly from the United States District Court for the District of Maryland issued search warrants for 634 Capitol Heights Boulevard, 905 Glen Willow Drive #7, 905 Chatsworth Drive, Lonnell Glover's 1998 Chevrolet pickup truck (VIN 1GCGK29R0WE126375), and 2002 GMC Denali XL1 (VIN 1GKFK66U92J228291). On June 15, 2007, law enforcement officers obtained renewed search warrants from Magistrate Judge Connelly, which were executed on June 19, 2007. Again, the confusion may have occurred because the government inadvertently sent as part of discovery, the search warrants approved on May 25, 2007 and June 4, 2007, not the June 15 search warrants. On August 21, 2008, the government provided defense counsel with the June 15 search warrants.

On May 25, 2007, June 4, 2007 and June 15, 2007, Magistrate Judge Connelly issued a search warrant for the 4908 Brentley Road. On June 18, 2007, Magistrate Judge Connelly issued another search warrant for 4908 Brentley Road, which permitted the execution of the search warrant at any time, including nighttime. The June 18 search warrant was executed on June 19, 2007. Again, the confusion may have occurred because the government inadvertently sent as part of discovery, the search warrants approved on May 25, 2007 and June 4, 2007, not the June 15 and June 18 search warrants. On August 21, 2008, the government provided defense counsel with the

June 15 and June 18 search warrants.  For these reasons, the defendants' arguments are meritless.

> **2.      Officers Lawfully Executed The Search of the Residence at 9002 Old Palmer Way With the Valid Consent of a Co-Owner and Occupant of the Property**.

Defendant Lonnell Glover (Document 252) seeks suppression of all physical evidence seized from 9002 Old Palmer Way.  The defendant asserts three challenges to the sufficiency of the consent search at this location: 1) the third-party consent was invalid after his initial refusal;  2) consent was invalidated by the duress caused by the presence of law enforcement officers; and 3) the search exceeded the scope of consent.  A review of supplemental evidence accompanying this motion and relevant case law renders each of the objections without merit.

> **a.      Consent from a co-owner and occupant of the residence at 9002 Old Palmer Road was legally sufficient for a search of the premises.**

Law enforcement officers conducted the search of the 9002 Old Palmer Road after receiving verbal and written consent of a co-owner and co-occupant of the property, Gwendolyn Madison.[2] It is well established that a search conducted pursuant to consent is constitutionally permissible without a search warrant.  E.g., Schneckloth v. Bustamonte, 412 U.S. 218 (1973).  This consent may be obtained from any third-party with common authority over the premises.  United States v. Matlock, 415 U.S. 164, 171 (1974);  United States v. Harrison, 679 F.2d 942, 947 (D.C. Cir. 1982). There is no requirement that consent be sought from the defendant, even if he is present at the scene. Georgia v. Randolph, 547 U.S. 103, 121-22 (2006).

In the present case, authority to search the premises was lawfully obtained.  Upon arriving

---

[2]  The defendant asserts that the search of the 9002 Old Palmer Road was not justified as a search incident to arrest under Chimel v. California, 395 U.S. 752 (1969), or a protective sweep under Maryland v. Buie, 494 U.S. 325 (1990).  However, law enforcement officials relied upon the consent of an owner and occupant of the premises in conducting the search, making a review of the sufficiency of these alternate theories unnecessary.

27

at the 9002 Old Palmer Road, law enforcement officers immediately arrested Glover when he answered the door. Thereafter, law enforcement officers obtained verbal authorization to search the premises from Madison, and she signed a consent to search document acknowledging her permission for the search. (See Exhibit A). As a co-owner and occupant of 9002 Old Palmer Road, Madison had "common authority" to consent to a search of the premises. Furthermore, Glover never refused consent or objected to the search in an effort to negate Madison's consent. As a result, the search was conducted lawfully with the verbal and written consent of Madison.

> **b.     Madison offered consent to search the Old Palmer Road residence freely and voluntarily.**

Defendant Lonnell Glover further asserts that Madison's consent was invalid due to alleged duress caused solely by the presence of armed law enforcement officers. The mere fact that law enforcement possess a weapon is not sufficient to overwhelm a person's free will and invalidate their consent. See United States v. Drayton, 536 U.S. 194, 205 (2002) ("That most law enforcement officers are armed is a fact well known to the public. The presence of a holstered firearm thus is unlikely to contribute to the coerciveness of the encounter absent active brandishing of the weapon."); United States v. Taylor, 31 F.3d 459, 463-64 (7th Cir. 1994) (finding a defendant's consent to search was valid despite his arrest by nearly a dozen officers brandishing weapons). Finally, in Ohio v. Robinette, 519 U.S. 33, 39 (1996), the Court held that the voluntariness of consent must be reviewed in light of the *totality of the circumstances*, rather than a single isolated factor.

In this case, law enforcement officers took Glover into custody at 9002 Old Palmer Road and requested permission to search the premises from Madison. She gave both verbal and written

28

consent for the search.  See Taylor, 31 F.3d at 463 (holding that a written consent form strongly supports finding that consent is voluntary).  Madison was not in police custody or subject to arrest at any time during the encounter.  See United States v. Watson, 423 U.S. 411, 424 (1976) (noting that custodial status can be a factor in determining voluntariness).  Furthermore, officers were cordial and professional when interacting with Madison, and did not brandish their firearms, utilize physical force, or act in an aggressive or hostile manner toward Madison.  When viewed in their totality, these factors supports finding that Madison gave valid consent to searching her premises.

> **c.     The search of the Old Palmer Road was within the scope of consent offered by Gwendolyn Madison.**

Defendant Lonnell Glover further contends that the law enforcement exceeded the scope of consent provided by Madison when they search 9002 Old Palmer Road.  The scope of consent offered is defined by how broadly a reasonable observer would have interpreted the consent under the circumstances.  Florida v. Jimeno, 500 U.S. 248 (1991). United States v. Rodney, 956 F.2d 295, 297-98 (D.C. Cir 1992).  In the present case, Madison provided the officers with verbal and written authority to search her residence.   The boxes of records seized by the police were located within the home and, therefore, within the scope of consent.  See United States v. Spring, 936 F.2d 1330 (D.C. Cir. 1991) (holding that consent to search includes containers located within the authorized area); United States v. Harrison, 679 F.2d 942, 947 (D.C. Cir. 1982) (scope of consent search by co-inhabitant with common authority over premises included boxes within shared areas of the home).

> **3.     The Search Warrant for 3723 Grant Place, N.E. Was Valid Despite Any Minor Discrepancies That May Appear in the Physical Description of the Residence.**

Defendant Smith seeks suppression of evidence seized from 3723 Grant Place, N.E. due to minor discrepancies about the description of the front door and location where the address number

is affixed to the residence.  (Document 194).

A search warrant's description of the location to be searched is sufficient if it enables law enforcement to ascertain and identify the place intended with reasonable effort.  E.g., Steele v. United States, 267 U.S. 498, 503 (1925).

In the present case, officers obtained a search warrant for the residence at 3723 Grant Place, N.E. and searched the premises associated with this exact address, and Smith was inside the residence at the time of the search.  Law enforcement was familiar with defendant's address based upon surveillance of Smith entering and exiting 3723 Grant Place, N.E.  Vehicles registered to Smith were observed parked in front of 3723 Grant Place, N.E., at various times during the investigation.  The affidavit in support of the search warrant and search warrant stated the address to be searched was 3723 Grant Place, N.E.  The minor differences noted by the defendant (i.e., the color of the door to the residence) fail to negate the warrant's validity because they did not hinder the ability of law enforcement officials to correctly identify the location of Smith's residence, as described in the affidavit and warrant.

**4.    Probable Cause Existed to Justify the Issuance of the Search Warrants.**

Defendants Lena Brown (Document 257), Cook (Document 209), Smith (Document 194), Taylor (Documents 234 & 235) Cornell Glover (Document 286), and Young (Documents 247 & 247-2) contend that the affidavits offered in support of the search warrants sought for various addresses in Maryland and the District of Columbia failed to demonstrate probable cause.  These arguments must fail because the affidavit was sufficient on its face and, even if the affidavit were deficient in some respect, the agents executing the warrant were entitled to rely on the warrants in good faith under United States v. Leon, 468 U.S. 897, 922 (1984).

30

### a.     Factual Background

On June 15, 2007, Special Agent Special Agent Ryan Pardee ("SA Pardee") of the FBI obtained search warrants for sixteen different addresses and two vehicles that were linked to the government's investigation into a drug trafficking conspiracy operated by Lonell George Glover and Anthony Maurice Suggs.  SA Pardee submitted affidavits in the District of Columbia and Maryland in support of all sixteen search warrants.  Id.  The affidavits incorporated by reference all previous affidavits submitted and approved by the magistrates.  The affidavits set forth detailed information concerning (1) the background and experience of SA Pardee; (2) the names of several co-conspirators and their criminal histories; (3) the locations to be searched and their descriptions; and (4) the extensive investigation that led up to the requested search warrants and that established the requisite probable cause.

The affidavits offer substantial evidence to establish probable cause for the existence of evidence at the targeted locations.  Significant portions of the evidence offered in the affidavits stemmed from wiretaps and listening devices capturing first-hand information about the defendants' drug dealing activities in and around this jurisdiction.  Additionally, the affidavits stated that defendants Lena Brown, Cook, Smith, Taylor, and Young, along with twenty-one other individuals, were indicted on June 12, 2007, on charges including conspiracy to distribute and to possess with intent to distribute phencyclidine ("PCP") and/or heroin.  The affidavits relied on SA Pardee's experience that drug dealers often keep or maintain records, weapons, drugs and drug paraphernalia in their business locations or residences.  When this evidence is considered, along with reasonable inferences that may be drawn, a substantial basis exists for the magistrates' probable cause finding.

31

### b.     The Affidavit Was Sufficient on Its Face.

When assessing probable cause for warrants, a magistrate must conclude that there is a fair probability that contraband or evidence of a crime will be found in a particular place.  Illinois v. Gates, 462 U.S. 213, 238-39 (1983) (citing Jones v. United States, 362 U.S. 257, 271 (1960)).  The issuing court's determination of probable cause "should be paid great deference by reviewing courts." Gates, 462 U.S. at 236 (citation omitted).  Moreover, the reviewing court should recognize that affidavits for search warrants "must be tested and interpreted by magistrates and courts in a commonsense and realistic fashion.  They are normally drafted by nonlawyers in the midst and haste of a criminal investigation. Technical requirements of elaborate specificity once exacted under common law pleading have no proper place in this area." United States v. Ventresca, 380 U.S. 102, 108 (1965).

Applying these standards, the information contained in the affidavits sufficiently established probable cause for each of the approved search warrants.  First, reviewing magistrates from two different jurisdictions deemed the information contained in the affidavits sufficient to establish probable cause.  It is improbable that two independent jurists were similarly mistaken about the existence of probable cause.  Second, the affidavits provided first-hand evidence, in the form of recorded conversations between the defendants, linking each of them to the drug conspiracy.  The affidavits supported by SA Pardee's experience establishing that drug dealers frequently keep evidence in their residences and businesses. See United Stated v. Johnson, 437 F.3d 69, 72 (D.C. Cir. 2006) (search warrant was sufficient to link drug dealer's criminal activity to defendant's residence where affidavit noted that drug dealers frequently keep business records, narcotics, proceeds from sales and firearms in their houses).  Third, the affidavit referenced that each of the locations to be

searched related to an indicted defendant. A grand jury's independent finding that probable cause existed to show each defendant participated in the drug conspiracy further affirms the strength of the evidence. See generally United States v. Conley, 186 F.3d 7, 16 n.4 (1st Cir. 1999) (affirming that the standard of proof governing a grand jury indictment is probable cause). Consequently, a fair probability of finding evidence existed to justify issuance of a search warrant for each of the targeted locations.

### c.    The Agents Executing the Warrants Relied On Them in Good Faith.

Even assuming the affidavits failed to establish probable cause, suppression of the evidence would not be an appropriate remedy if the officers conducting the search acted in "objectively reasonable reliance" on the warrants' validity. Leon, 468 U.S. at 922. Ordinarily, the existence of a warrant is sufficient to establish that the officers acted in good faith in conducting the search. Id. However, this presumption can be challenged at a hearing if a defendant presents "substantial preliminary information" that an affiant made intentionally or recklessly false statements in the affidavit. See Franks v. Delaware, 438 U.S.154, 155-56 (1978). The defendants fail to offer any substantial evidence that SA Pardee acted with dishonesty or recklessness in drafting the affidavit for the search warrants.[3] Therefore, under Leon, the Court should deny the motions to suppress physical evidence introduced by defendants Lena Brown, Cook, Smith, Taylor, and Young regardless of the affidavits' sufficiency.

---

[3] Defendants Lena Brown and Taylor contend that SA Pardee acted recklessly in characterizing several intercepted telephone communications. (Document 257 at 6; Document 235 at 2-3.). However, simply disputing the affiant's summary and interpretation of an intercepted communication is insufficient to demonstrate recklessness. See United States v. Sobamowo, 892 F.2d 90, 94 (D.C. Cir. 1989) (holding that a defendant's challenge to the affiant's summary and interpretation of a telephone conversation was insufficient to seek a Franks hearing).

**5.    The Government Does Not Intend to Introduce Evidence Lawfully Taken from Brown and Smith's Vehicles.**

Defendant Lena Brown seeks suppression of physical evidence seized from a 2001 black Toyota Avalon. (Document 257).  Brown gave law enforcement officers consent to search her automobile.  Nothing was taken from Brown's vehicle.  Consequently, the motion for suppression is moot and should be denied.

Defendant Smith also seeks suppression of physical evidence obtained from his 2002 black BMW and 2002 Cadillac Escalade, which officers seized.  (Document 194).  These vehicles were taken for forfeiture purposes and administratively searched.  The government does not intend to introduce anything taken from Smith's vehicles, and therefore the motion is moot.

**6.    Officers Lawfully Seized "Plain View" Evidence from Washington's Travel Bag After Exigent Circumstances Justified Gathering Appropriate Clothing for the Defendant**

Defendant Washington seeks the suppression of physical evidence recovered from 610 Park Road, N.W., Washington, D.C. at the time of his arrest based on the absence of lawful authority for the search.  A partially clothed arrestee constitutes an exigency that allows officers to retrieve appropriate clothing or footwear without violating the Fourth Amendment. See, e.g., United States v. Clay, 408 F.3d 214, 218 (5th Cir. 2005) (holding that officer could retrieve appropriate footwear for arrestee from bedroom); United States v. Gwinn, 219 F.3d 326 (4th Cir. 2000) (holding that an arrestee's partially clothed status could create an exigency authorizing officer's reentry into the arrestee's home); United States v. Titus, 445 F.2d 577 (2nd Cir. 1971) (holding that an officer may enter arrestee's home to retrieve clothing).  An officer may seize any evidence discovered in "plain view" during the lawful gathering of appropriate clothing or footwear for the arrestee. See Coolidge

34

v. New Hampshire, 403 U.S. 443 (1971) (allowing seizure of evidence in "plain view" during a search justified by exigent circumstances).

In the present case, officers located and arrested Defendant Washington in the bathroom of the residence. In an effort to provide the defendant with proper attire, an officer retrieved clothing from Washington's travel bag. While gathering clothing, the officer discovered and seized several items in "plain view" within the bag's main compartment. In light of the officer's lawful authority to retrieve clothing for the defendant, the seizure of "plain view" evidence is consistent with the mandates of the Fourth Amendment and the Court should deny Washington's motion.

**7.     Law Enforcement Officers Executed a Valid Search Warrant at Velma Williams' Residence.**

Defendant Williams contends that the government executed a search warrant at Williams' residence, in St. Louis, Missouri, without a search warrant. (Document 221). That search, however, was conducted pursuant to a search warrant. However, that search warrant has not yet been produced in discovery. The government is now in the process of obtaining a copy of that search warrant from the St. Louis law enforcement agents who conducted that search and will provide this documentation to defense counsel as soon as it becomes available.

At present, the government does not intend offer into evidence any items that were recovered from Velma William's residence. If this changes, the government will give notice to defense counsel and the Court before seeking to introduce such material. But for now, the government suggests that the Court this motion as moot.

**8.     Law Enforcement Officers Obtained the Evidence from Charles Gladden's Search Incident to Arrest.**

Defendant Gladden contends that law enforcement needed a search warrant to enter a third

35

party's residence to arrest Gladden. (Document 295). First, it should be noted that the third party told law enforcement officers that Gladden was inside his house, before they entered. In United Sates v. Lewis D. McCarson, 527 F. 3d 534, n.1 (D.C. Cir. 2008), the Court of Appeals, in addressing this very issue that law enforcement do no need a search warrant to arrest an individual in a third party's home, "If an arrest warrant and reason to believe the person named in the warrant is present are sufficient to protect that persons fourth amendment privacy rights in his own home, they necessarily suffice to protect his privacy rights in the home of another."   Therefore, law enforcement were permitted to enter the third party's home to arrest Gladden.

Defendant Gladden contends that the items seized from his clothing at the time of his arrest, were seized unlawfully. (Document 295). These items were taken search incident to arrest. After making a valid arrest, police may make a full search of the arrestee, as well as the area that was under the arrestee's personal control at the time of arrest. Chimel v. California, 395 U.S. 752, 763 (1969); United States v. Abdul-Saboor, 85 F.3d 664 (D.C. Cir. 1996). Therefore, the items taken from defendant were lawfully seized.

36

### B.  Motions to Suppress Statements[4]

Defendants Cook (Document 208), Lena Brown( Document 197), Young (Document 248), Smith (Document 193), and Gladden (Document 295), move the Court to suppress statements made to law enforcement authorities at the time of and/or following their arrests, claiming that those statements were made in violation of the defendants' Fifth Amendment rights, the statements were involuntarily, and the statements violated <u>Miranda v. Arizona</u>, 384 U.S. 436 (1966).  Defendants Cook, Brown, Smith, Gladden and Young's  motions' are without merit and should be denied.

### 1.  Cook's Motion to Suppress Statements

Defendant Cook claims that he did not waive his constitutional rights and law enforcement used "unreasonable psychological pressure" on him, when he was questioned "without being appropriately advised of his <u>Miranda</u> rights."

Defendant was questioned by FBI agents, after he was advised of his Miranda rights. Defendant's post-rights, post-arrest statements were made after he was properly Mirandized.  Under <u>Miranda v. Arizona</u>, 384 U.S. 436 (1966),  police are required to give warnings to suspects about their Fifth Amendment rights before they are subjected to interrogation.  In this case, the officers properly explained to defendant his <u>Miranda</u> rights before he made statements.  Therefore, there was no violation of defendant's constitutional rights pursuant to <u>Miranda</u>.

Defendant Cook has not provided the Court with facts sufficient to warrant a hearing, and the Court should deny the motion without a hearing.  "[A] criminal defendant has no absolute or presumptive right to insist that the district court take testimony on every motion."  <u>United States v.</u>

---

[4]  The government responds to Lonnell Glover's motion to suppress GPS evidence in a separate pleading (#312)

Panitz, 907 F.2d 1267, 1273 (1st Cir.1990) (citations omitted).  Evidentiary hearings are warranted only when a defendant makes a sufficient showing that a violation occurred.  Id.  In the case now before the Court, defendant provides no factual allegations which would entitle them to relief, or even sufficient to make the prima facie showing needed to entitle them to a hearing on this issue.  See, e.g., United States v. Thornton, 454 F.2d 957, 967 n.65 (D.C. Cir. 1971) ("An evidentiary exploration is not required as a matter of course, but only upon factual allegations which, if established, would warrant relief.).

### 2.    Lena Brown's Motion to Suppress Statements

Defendant Lena Brown claims that her Miranda rights were violated (Document 197), without providing any facts to support her claim, and without specifying in what manner her Miranda rights were violated.  Shortly before 9:49 a.m., on June 19, 2007, defendant was advised of her constitutional rights, waived same, and was questioned by FBI agents.  Lena Brown's Miranda rights were provided to her, the statement was freely and voluntarily given, and defendant is not entitled to a hearing without making a sufficient factual showing that a violation occurred.  Therefore, the motion should be summarily denied.

### 3.    Young's Motion to Suppress Statements

Defendant Young primarily complains that his statements should be suppressed because law enforcement violated his constitutional rights when: (1) he was asked if there were weapons inside his residence; (2) when he directed law enforcement officers to a firearm in a closet; (3) and when he spontaneously stated that there was illegal contraband under his bed (Document 248).

On June 19, 2007, Young was arrested inside one of his residences.  After being handcuffed, law enforcement officers asked defendant if there were any weapons inside the residence before he

38

was Mirandized, for their safety. Young directed the law enforcement officers to a firearm inside his residence. In <u>United States v. Brown</u>, 449 F. 3d 154 (D.C. Cir. 2006), the D.C. Circuit decided this very issue. In <u>Brown</u>, the defendant gave law enforcement the location of a gun, before he was Mirandized. <u>Id.</u> at159. The Court concluded that "the police officer's inquires fall squarely within the public safety exception to <u>Miranda</u>." <u>See</u> <u>also</u>, <u>New York v. Quarles</u>, 467 U.S. 649, 104 S.Ct. 2626, 81 L.Ed.2d 550 (1984) (recognizing a public safety exception to Miranda).

Next, when Young directed law enforcement to illegal contraband under his bed after law enforcement officers said they were going to search his residence based on a search warrant, Young's statement were not "custodial interrogation." Not "all statements obtained by the police after a person has been taken into custody are to be considered the product of interrogation." <u>Rhode Island v. Innis,</u> 446 U.S. 291, 299 (1980). "The fundamental import of the privilege [against self-incrimination] while an individual is in custody is not whether he is allowed to talk to the police without the benefit of warnings and counsel, but whether he can be interrogated." <u>Id.</u> (quoting <u>Miranda</u>, 384 U.S. at 478.) "The special procedural safeguards outlined in <u>Miranda</u> are required not where a suspect is simply taken into custody, but rather where a suspect in custody is subjected to interrogation." <u>Id.</u> "Interrogation . . . must reflect a measure of compulsion above and beyond that inherent in custody itself." <u>Id.</u> For that reason, "<u>Miranda</u> safeguards come into play whenever a person in custody is subjected to either express questioning or its functional equivalent" and the words or actions of the police are such that "the police should know [they] are reasonably likely to elicit an incriminating response from the suspect." <u>Id.</u>

In the instant case, defendant was not asked any questions by the officers or in any way enticed into making the statements. The content of the statement made by law enforcement were

merely to inform Young that they had a search warrant, and they were going to search his residence. Young's statement to law enforcement was made by his own choice, not by anything law enforcement said to him. For these reasons, Young's motion to suppress statements should be denied.

**4.      Smith's Motion to Suppress Statements**

Defendant Smith asserts that law enforcement questioned him without first explaining his constitutional right to him and him waiving those rights, and his statements was were involuntary. (Document 193).

While law enforcement were executing the arrest warrant and search warrant at defendant's residence, defendant unprovoked stated "I lived the life now I have to pay the price . . . maybe do the time." Defendant's statement was spontaneous and in no way based on words or actions of law enforcement. Therefore, no <u>Miranda</u> warnings were unnecessary.

Next, law enforcement asked defendant, in an effort to make sure defendant had proper clothing, asked him where they could locate a shirt for Smith to wear to FBI headquarters. Smith told law enforcement officers that his long sleeve shirts were "up where you found the drugs." This question by law enforcement was not interrogation - likely to illicit an incriminating response, warranting <u>Miranda</u> warnings. (As discussed above, not all statements by law enforcement are interrogation).

**5.      Gladden's Motion to Suppress Statements**

Defendant Gladden claims that his statements to law enforcement were in violation of Miranda, and should be suppressed. (Document 295). Defendant Gladden was advised of his constitutional right prior to any questions by law enforcement. As noted in above, the Court should summarily deny Gladden's motion because he has not provided the Court with sufficient facts, or any

40

facts, to warrant a hearing.

**6.      The Statements of Cook, Brown, Young, Smith and Gladden were Voluntary**

Defendants claim their statements to law enforcement was not voluntary.  Defendants were not subjected any type of pressure which would warrant their waiver involuntary and a violation of his due process rights.  The test for whether a statement is voluntary for purposes of due process is whether the statement is "the product of an essentially free and unconstrained choice by its maker." Schneckloth v. Bustamonte, 412 U.S. 218, 225-26 (1973) (citing Columbe v. Connecticut, 367 U.S. 568, 602 (1961)).  For a statement to be involuntary, it must have been caused by government overreaching.  Colorado v. Connelly, 479 U.S. 157, 163-64 (1986) ("[a]bsent police conduct causally related to the confession, there is simply no basis for concluding that any state actor has deprived a criminal defendant of due process of law"); Martin v. United States, 567 A.2d 896, 908 (D.C. 1989) ("[w]ithout a showing of coercive police activity . . . there is not a basis for concluding that [the defendant's] confession was involuntary") (internal quotations omitted).

In Lego v. Twomey, 404 U.S. 477, 489 (1972) the Court concluded that the government has burden of establishing by preponderance of the evidence that the confession was voluntary.  See also Rogers v. Richmond, 365 U.S. 534, 544 (1961) (government conduct must be "such as to overbear [a suspect's] will to resist and bring about confessions not freely self-determined"); Bliss v. United States, 445 A.2d 625, 631-32 (D.C. 1982) (defendant was able to answer questions even immediately after shooting, after receiving food, water, and medical attention; United States v. Pelton, 835 F.2d 1067 (4th Cir. 1987) (FBI agent's assertion that FBI would launch full-scale investigation if defendant did not cooperate not sufficient to render statements involuntary).

Based on the foregoing, defendants' motion to suppress statements should be denied.

41

### C.  Motion to Suppress GPS Evidence

Defendant John Smith (#192) moves this Court to suppress all evidence recovered as a result of the monitoring of transmissions from the Global Positioning System on Smith's 2003 Cadillac Escalade pickup truck.  The motion to suppress and the request for evidentiary hearing  should be denied because the defendant has not shown the information contained in the affidavit to obtain the warrant was misleading, the warrant itself lacked probable cause, and has not demonstrated the requisite proof required by *Franks v. Delaware* for an evidentiary hearing.   Furthermore, law enforcement was not even required to obtain a warrant to monitor the location of Smith's truck and thus the evidence obtained from the tracking should not be suppressed.

    **1.**       **The Information In The Affidavit Was Not Misleading And Thus The Warrant Did Not Lack Probable Cause.**

FBI Special Agent Ryan Pardee did not submit false or misleading information in his affidavit and thus the Honorable Rosemary M. Collyer was justified in finding probable cause to issue the warrant.  When assessing probable cause for warrants, the issuing magistrate's task

> is simply to make a practical, commonsense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place.

*Illinois v. Gates*, 462 U.S. 213, 238 (1983).  The reviewing court subsequently "is simply to ensure that the [issuing court] had a 'substantial basis for...conclud[ing]' that probable cause existed."  *Id.* at 238-39 (quoting *Jones v. United States*, 362 U.S. 257, 271 (1960)).  The issuing court's finding of probable cause "should be paid great deference by reviewing courts."  *Gates*, 462 U.S. at 236 (internal quotation marks omitted).  Moreover, in reviewing a warrant application, courts must interpret the affidavit "in a commonsense and realistic fashion.  They are normally drafted by nonlawyers in the

midst and haste of a criminal investigation. Technical requirements of elaborate specificity once exacted under common law pleading have no proper place in this area." *United States v. Ventresca*, 380 U.S. 102, 108 (1965).

The affidavit explicitly details a number of events and wiretap-intercepted telephone calls strongly indicating to SA Pardee, based on his years of experience and extensive training, that Defendant Smith was using his 2003 Cadillac Escalade pickup truck to transport narcotics. *See* Affidavit, Parag. 11-21. Defendant Smith purportedly seems to assert that because no drugs were found in Smith's truck during the April 21, 2007 search, the information Pardee presented in the affidavit on April 20, 2007 was false and misleading. Defendant has not offered, and the government has not found, any case that even remotely suggests that because a search did not yield the contraband suspected in the warrant, the warrant lacked probable cause. The assessment of probable cause is not done retroactively, but beforehand based on the circumstances set forth in the affidavit, including the truthfulness and knowledgeability of the affiant. *See Gates*, 452 U.S. at 238. In the instant case, Pardee's "veracity" and "basis of knowledge" that Smith was using his Escalade to transport narcotics was amply supported by wiretap-intercepted telephone calls between Lonnell Glover and Smith and visual surveillance of Smith and his Escalade. *Id.*; Affidavit, Parag. 11-21. Furthermore, the warrant was to monitor Smith's Escalade via OnStar, not to search the vehicle for contraband. Thus, the fact that the vehicle contained no narcotics during the April 21, 2007 search does not mean SA Pardee's basis of knowledge, supplied in the April 20, 2007 affidavit, that Smith was using the truck to transport narcotics was "misleading"; it simply means that no drugs were found in the truck in that particular search.

2. **Law Enforcement Did Not Need A Warrant To Use OnStar Global Positioning System To Monitor Smith's Truck.**

Regardless of whether the warrant was proper, evidence obtained from the monitoring of Smith's truck via OnStar should not be suppressed because using a tracking device on a vehicle does not violate the Fourth Amendment. *See United States v. Jones*, 451 F. Supp. 2d 71, 88 (D.D.C. 2006), *citing United States v. McIver*, 186 F.3d 1119, 1127 (9th Cir. 1999) (placement of tracking device is neither search nor seizure under the Fourth Amendment); *United States v. Moran*, 349 F. Supp. 2d 425, 467 (N.D.N.Y. 2005) (no Fourth Amendment violation through installation of GPS device without warrant because "law enforcement personnel could have conducted a visual surveillance of the vehicle as it traveled on the public highways"). Defendant Smith's contention that the monitoring evidence should be suppressed because of an improper warrant is therefore meritless because, as the *Jones* court explicitly stated, law enforcement does not even need a warrant to monitor a vehicle via tracking device. *See* 451 F. Supp. 2d at 88 ("the government is not required to obtain a court order or search warrant to install a GPS or similar tracking device on a vehicle").

Law enforcement's procurement of a warrant went above their obligations as articulated by the Supreme Court in *United States v. Knotts*, which held that the warrantless installment of a "beeper" device in a vehicle for tracking purposes did not violate the Fourth Amendment. *See* 460 U.S. 276, 281-82 (1983) ("A person traveling in an automobile on public thoroughfares has no reasonable expectation of privacy in his movements from one place to another"). Thus, the evidence obtained from the monitoring of the OnStar Global Positioning System should not be suppressed for any "misleading" information in the affidavit because law enforcement, consistent with their Fourth

44

Amendment obligations under *Knotts*, was not even required to obtain a warrant to monitor Defendant

Smith's truck via the OnStar Global Positioning System installed in the vehicle.

> **3.     Defendant Smith's Request For A *Franks* Hearing Should Be Denied Because He Has Not Demonstrated The Requisite Proof To Obtain A Hearing.**

Under *Franks*, a defendant, in order to overcome the "presumption of validity" with respect

to affidavits in support of search warrants to obtain an evidentiary hearing, must make a "substantial

preliminary showing that a false statement knowingly and intentionally, or with reckless disregard

for the truth, was included by the affiant in the warrant affidavit, and...the allegedly false statement

is necessary to the finding of probable cause." *Franks v. Delaware*, 438 U.S. 154, 171 (1977).  The

defendant is only entitled to an evidentiary hearing if "his attack on the accuracy of the affidavit is

'more than conclusory' and is accompanied by 'allegations of deliberate falsehood or of reckless

disregard for the truth, and those allegations must be accompanied by an offer of proof.'" *United

States v. Gaston*, 357 F.3d 77, 80 (D.C. Cir. 2004) (*quoting Franks*, 438 U.S. at 171) (emphasis

added).  Furthermore, even if the defendant makes the requisite preliminary showing, a hearing is not

required unless the alleged misstatement was material to the finding of probable cause.  *See Jones*,

451 F. Supp. 2d at 78, *citing United States v. Richardson*, 861 F.2d 291, 294 (D.C. Cir. 1988).

In the instant case, Defendant Smith fails to make the "substantial preliminary showing" that

false statements were included in the affidavit, offering conclusory assertions of the sort that the

*Gaston* court specifically cited as being insufficient to satisfy the defendant's burden under *Franks*.

Defendant Smith fails to offer any evidence showing why Pardee's "deliberately false" allegations

were not true: Smith merely tries to point out minor inconsistencies between this and subsequent

affidavits to show falsity.  Even if Pardee's allegations could be construed as materially false, Smith

has made no showing that Pardee made such "misstatements" with a deliberate intent to deceive the court or manifest a reckless disregard for the truth.  Pardee, as stated numerous times in the affidavit, based his allegations on wiretap-intercepted telephone calls and his extensive training and experience, not on "unsubstantiated, bare conclusions."  (Document 192 at 7).  Accordingly, Defendant Smith should not be granted an evidentiary hearing on this matter because he has failed to make the requisite showing that Pardee, in the affidavit, made deliberately false statements material to the finding of probable cause.

# VI.  MOTIONS TO DISMISS

## A.    Defendant Jerome Hampton's Motion to Dismiss Indictment

Defendant contends that the indictment should be dismissed because the government may have "presented false evidence" to the grand jury. (Document 210).  Specifically, defendant contends that when the government represented at defendant's June 22, 2007 bond hearing that Hampton came up to a law enforcement vehicle and looked inside the vehicle, that was false information, Defendant further claims that the government presented that evidence to the grand jury that indicted defendant. Thus, defendant claims this false information warrants that the indictment be dismissed against defendant.  Law enforcement will testify that Hampton did in fact drive up to the law enforcement vehicle and look inside the vehicle.  Therefore, although the government mistakenly told the Court at a subsequent bond hearing on January 29, 2008, that it was co-defendant Henry Brown who drove up to the law enforcement vehicle, it was actually both Brown and Hampton, who on separate occasions drove up to the law enforcement vehicle to determine if it was occupied by law enforcement.

Even assuming that the information was false, and presented to the grand jury, the D.C. Circuit court has said that in regards to disclosure of grand jury materials according to Fed.R.Crim.P. 6(e)(3)(E)(ii) that "it is . . .settled that conclusory or speculative allegations of misconduct do not meet the particularized standard; a factual basis is required." <u>United States v. Naegele</u>, 474 F.Supp.2d 9, 10 (D.C. Cir. 2007).  For these reasons, the defendant's motion should be denied.

47

**B.      Herbert Young's Motion to Dismiss on Speedy Trial Act Violation**

Defendant Young contends that there has been a Speedy Trial Act (STA) violation in the pending case against him, and the Court should dismiss the indictment. (Document 301).[5] The defendants' arguments are meritless.

The Speedy Trial Act, 18 U.S.C. Section 3161 et seq ("the Act"), was enacted by Congress in 1974 to effectuate the Sixth Amendment right to a speedy trial by setting specific time limits within which criminal trials must commence. The Act requires that a defendant be brought to trial within seventy days of either the defendant's first appearance before a judicial officer or the filing of the indictment, whichever is later. 18 U.S.C. Section 3161(c)(1). Also, 18 U.S.C. Section 3164 provides the trial of a detained person shall commence within ninety days of detention. Section 3161(h) identifies specific instances when time periods are excluded from the Act. Specifically, Section (F) requires the exclusion of any period of delay resulting from any pretrial motion, from the filing of the motion through the conclusion of the hearing on, or any other prompt disposition of such motion. 18 U.S.C. Section 3161(h)(1)(F).

It is the government's contention that no time has elapsed from the STA. Defendant was arrested on June 19, 2007, and had his initial arraignment on June 20, 2007. On June 25, 2007, the government filed a motion to suspend the computation of time from the STA. (Document 38).[6] On July 27, 2007, the Honorable Ellen S. Huvelle, excluded 180 days from the STA, commencing on

---

[5]      It is unclear to the government what Young is claiming is the STA violation. Therefore, the government will treat the motion as a general STA violation motion.

[6]      The Court may initially believe that the 5 days between June 20, 2007, and June 25, 2007, should be calculated for STA purposes. Several of the co-defendants remained at large during this time, and the 5 days should not be counted for STA purposes. See 18 U.S.C. Section 3161(h)(7).

July 27, 2007.  (The time between the filing of Document 38, and the court's order is also excluded because the motion was under advisement).   On January 10, 2008, the government filed a second motion to exclude time from the STA, prior to the expiration of Judge Huvelle's order.  (Document 148).   On February On February 1, 2008, this Court excluded another 150 days from the STA computation.  (Document 164).   On May 16, 2008, prior to the expiration of the Courts 150 day exclusion from the STA, co-defendant John Smith filed a motion to suppress.  (Document 193).  This motion remains outstanding, and effectively has tolled the STA clock.[7]  For these reasons, there is no STA violation, and defendant's motion should be denied without a hearing.

### C.     Herbert Young's Motion to Dismiss Indictment

Defendant Young filed a motion to dismiss on several grounds, most of defendant's legal claims are unclear, and indecipherable.  (Document 300).   One of defendant's argument for dismissal is based on "multiplicity" grounds.   The government will rely on its response in its Severance Section above in response to defendant's multiplicity grounds for dismissal.   See Lovgren v. Byrne, 787 F.2d 875 (3d. Cir. 1986), holding that multiplicity does not exist if count in the indictment requires proof of facts that the other counts do not require; United States v. Vargas-Castillo, 329 F.3d 715 (9th Cir. 2003)(indictment charging defendant with separate counts for possession and importation of both cocaine and marijuana was not multiplicitous and did not violate double jeopardy).

Next, defendant's other motion to dismiss arguments will be treated in a more generic fashion "Dismissal of an indictment is required only in flagrant cases in which the grand jury has been overreached or deceived in some significant way . . . ."  United States v. Thompson, 576 F.2d 784, 786

---

[7]     There are other arguments that the government could have made regarding the tolling of the STA, but for simplicity purposes we believe the above argument establishes that the STA was tolled.

49

(9th Cir. 1978).  "It must be shown that the prosecutor's conduct significantly infringed upon the ability of the grand jury to exercise its independent judgement."  United States v. Cederquist, 641 F.2d 1347, 1353 (9th Cir. 1981).  "Dismissal of the indictment is appropriate only if it is established that the violations substantially influenced the grand jury's decision to indict, or if there is grave doubt that the decision to indict was free from the substantial influence of such violations."  Bank of Nova Scotia v. United States, 108 S.Ct. 2369, 2374 (1988).  See also United States v. Serfini, 7 F.Supp. 2d 529, 547 (M.D. Pa. 1998) (defendant failed to establish any improper conduct on the part of the prosecutor which cast doubt on decision to indict).

In this case, defendant Young has failed to establish any legally cognizable reason for dismissing the indictment.  The defendant has raised no facts or circumstances which warrant dismissal of the indictment, and the motion should be denied without a hearing.

## VII. CONCLUSION

The government believes that it has addressed all of defendants' pending pretrial motions. To the extent that the government has inadvertently omitted a particular defense motion, the government requests that defense counsel inform the government so that the government may attempt to supplement its response before the motions hearing date.

Respectfully Submitted,

JEFFREY A. TAYLOR
United States Attorney

By:    _____/s/_____
WILLIAM O'MALLEY
ANTHONY SCARPELLI
JOHN HAN
Assistant United States Attorneys

United States Attorney's Office
OCNT Section
555 Fourth St., NW
Washington, D.C. 20530
202-514-7566

51